UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALETRUS ALEXANDER

As Special Personal Representative of the
Estate of Monique Miller

    Plaintiff,

                                        Docket No.:  1:14-cv-13675

v.

NANCY PADVAISKAS &
JOHN AND JANE DOE(S)

    Defendants.

## COMPLAINT AND JURY DEMAND

**INTRODUCTION**

    This civil rights claim arises out of the wrongful death of Monique M. Miller by multiple drug intoxication while in the custody of the Massachusetts Department of Correction at MCI-Framingham on August 23, 2013.  The defendants, employees of the Department of Correction and Middlesex County Sheriff's Office, exhibited deliberate indifference to obvious risks and obvious threats to Ms. Miller's health, which resulted in her tragic and preventable death.

**PARTIES**

1. Plaintiff Aletrus Alexander brings this action as the Special Personal Representative of the estate of Monique M. Miller ("Miller").  She is the oldest of Miller's five children and heirs, who range in age from eight to twenty-four.

2. Miller died on August 23, 2013 while in the custody of the Massachusetts Correctional Institute in Framingham, Massachusetts ("MCI-Framingham").  She was forty-two years old.  MCI-Framingham is a medium-security women's prison operated by the Massachusetts Department of Correction.

3. At all times relevant, Defendant Nancy Padvaiskas was a correctional officer at MCI-Framingham acting under the color of law as an employee

of the Massachusetts Department of Correction. Padvaiskas is sued in her individual capacity.

4. The Defendants John and Jane Doe(s) are deputy sheriffs working for the Middlesex County Sheriff's Department ("Sheriff's Department"). The identity of these defendants can only be ascertained through discovery because the Sheriff's Department has failed to respond to a public records request from Plaintiff's attorneys. At all times relevant, the defendant deputy sheriffs were acting under the color of law as employees of the Commonwealth of Massachusetts. The unidentified sheriffs are sued in their individual capacities.

**FACTS**

5. The following facts are drawn primarily from Massachusetts Department of Correction reports created in connection with the investigation into Monique Miller's death. Obtaining those reports necessitated the filing of public records lawsuit in Suffolk County Superior Court.[1]

6. Miller arrived at MCI-Framingham on or about May 21, 2013. She was held on charges of shoplifting and possession of a controlled substance, second offense.[2] At the time she was forty-one years old.

7. Miller was initially housed in the mental health unit separate from general population because she "had a bizarre presentation upon admission" which included "poor bx control, punching the air, and being a poor historian of her mental health." Her prison medical records indicate diagnoses of PTSD and opioid dependence and previous mental health hospitalizations, including one two weeks prior to her arrival at MCI-Framingham. She was detoxing from Suboxone (generic name Buprenorphine, a medication used to treat opioid addiction) upon arrival at MCI-Framingham and reported that she had drank bleach three weeks prior in an attempt to kill herself. She was discharged to general population on or about June 5, 2013.

8. In general population Miller was housed in the Pioneer Housing Unit with a cellmate named "K.R."

9. On August 22, 2013, Miller was transported to a court appearance in Boston for outstanding charges including possession of a controlled substance, intimidation and trespassing. She was taken in van operated

---

[1] Bita III v. Mass. Dep. of Correction, *et. al.*, Docket: SUCV2014-01801-F.
[2] She was subsequently sentenced on those charges in June 2013.

by the Middlesex County Sheriff's Department along with other inmates who had court appearances in Framingham, Waltham, Boston, Cambridge District Court in Medford and Concord respectively. The van left MCI-Framingham at about 9:00 a.m. and returned around 8 p.m.

10. During the afternoon and evening of August 22, 2013 Miller was temporarily held with other transported prisoners in the Middlesex County Sheriff's lock-up on Thorndike Street in Cambridge, Massachusetts. The lock-up was used by the Sheriff's Department as a collection point for inmates and newly sentenced detainees before they were collectively transported back to MCI-Framingham. Upon information and belief, the Thorndike Street jail and lock-up were closed in June 2014.[3]

11. While in the Sheriff's Department lock-up Miller snorted heroin obtained from a presently unidentified detainee.[4]

12. The unidentified detainee was concealing or "stuffing" heroin and Seroquel in her vagina when she was placed in the lock-up. Seroquel is a trade name for Quetiapine Fumarate, a commonly abused drug often prescribed as a sedative which can be taken orally or ground up and snorted.

13. Video surveillance of the lock-up shows Miller snorting a line of heroin at around 6:30 p.m. Three other MCI-Framingham inmates admitted to snorting heroin in the lock-up, one of whom was found in possession of a baggie of heroin and two Seroquel pills. A fourth inmate was found in possession of one and a half Seroquel pills.

14. Miller reportedly "stuffed" nine Seroquel she obtained from the unidentified detainee in the lock-up but does not appear to have ingested any of the pills.

15. Upon returning to MCI-Framingham, one of the inmates held in the Sheriff's lock-up with Miller was reportedly taken immediately to the infirmary, also known as the Health Services Unit (HSU), "because of all the drugs she had been on."

16. Prison medical officials nevertheless failed to investigate the possible

---

[3] http://www.middlesexsheriff.org/Press%20Releases/June%202014/Middlesex%20Jail%20in%20Cambridge%20Closure.pdf, accessed on September 22, 2014.
[4] Inmate names are redacted from the DOC reports provided to Plaintiff's attorney.

infiltration of drugs into the prison or assess the health and well-being of those inmates returning from the Sheriff's lock-up with the inmate taken to HSU, including Miller.

17. Miller's cellmate K.R. told a Massachusetts State Police investigator that Miller was "obviously high" when she saw her in their cell at approximately 8:45 p.m. that night. K.R. reportedly denied seeing Miller take any drugs, but told the State Police that Miller had asked her if she wanted any Seroquel.

18. At approximately 9:30 p.m. that night Miller and K.R. were locked in for the night.

19. Later that night K.R. observed Miller "nodding off" in the cell and banging her head on the bed frame. Between 12:00 a.m. and 1:00 a.m. K.R. reportedly observed Miller fall off the bottom bunk onto the floor of the cell. K.R. at first saw Miller lying on her side in the fetal position but soon thereafter observed her on her stomach, face-down.

20. On August 22, 2013, Defendant Correctional Officer Nancy Padvaiskas was the floor officer working the 11 p.m. to 7 a.m. shift in the Pioneer Housing Unit where Miller and K.R. were housed. Her duties included performing rounds every thirty minutes.

21. Padvaiskas reported that she first observed Miller sitting on the floor of the cell at the beginning of her shift but then observed Miller lying face down on the concrete floor from about 12:30 a.m. on.

22. Despite observing Miller lying face-down on the concrete floor, Padvaiskas did not enter the cell to determine if Miller required medical attention.

23. At about 1:00 a.m. on August 23, 2013, Padvaiskas again observed Miller still lying face-down in the cell. Padvaiskas shined a flashlight on Miller but again failed to enter the cell to determine if Miller required medical attention.

24. Padvaiskas continued to perform rounds every half hour throughout the night and early morning, repeatedly observing Miller face-down and motionless on the concrete floor of the cell.

25. At 5:09 a.m. Padvaiskas stood outside the cell and enlisted K.R. to attempt to wake Miller, who remained entirely unresponsive.

26. MCI-Framingham medical staff entered the cell at 5:17 a.m. and found

that Miller had no pulse, was not breathing, and was lying in a puddle of urine. An ambulance was called and prison personnel attempted C.P.R. on Miller.

27. When emergency medical technicians responded to MCI-Framingham and assumed care at about 5:30 a.m. on August 23, 2013, they noted that "patient was cold, **rigor present,** pupils fixed and dilated…her airway is full of vomitus." Based on her body temperature and the presence of rigor mortis, Miller had been lying dead on the floor of the cell for hours. She was officially pronounced dead via telephone by a doctor at Metrowest Medical Center at 5:43 a.m.

28. A search of the cell that morning produced two Seroquel pills wrapped in a paper towel in the trash barrel. Investigators found another paper towel in the trash barrel listing the names of the inmates who were transported with Miller on August 22, 2013. No other contraband was found in the cell.

29. The Office of the Chief Medical Examiner determined that Miller's death was caused by acute intoxication due to the combined effects of opiates, amitriptyline, and nortriptyline.

## COUNT ONE
## NANCY PADVAISKAS – 42 U.S.C. § 1983

30. The preceding paragraphs are re-stated and incorporated by reference in this cause of action.

31. Defendant Nancy Padvaiskas acted with deliberate indifference to Monique Miller's serious and obvious need for emergency medical attention by failing to enter the cell to check on her well-being after she was observed lying face down on the concrete floor of the cell over a period of several hours.

32. Defendant Nancy Padvaiskas unnecessarily ignored the obvious objective risk of injury and death to an "at-risk" inmate who was observed lying face down on the floor of her cell.

33. Padvaiskas either knew subjectively that Miller was in serious and obvious need for medical attention and intentionally took no action or was reckless with regard to Miller's need for emergency medical attention.

34. Padvaiskas' conduct violated the Eighth Amendment prohibition of cruel and unusual punishment and Miller's right to life and due process under

the Fourteenth Amendment.

35. Padvaiskas' failure to provide medical attention was also "shocking to the conscience," in violation of Miller's Fourteenth Amendment right to substantive due process.

36. Padvaiskas' violation of Miller's civil rights resulted in her preventable death.

## COUNT TWO
## JOHN AND JANE DOE(S) – 42 U.S.C. § 1983

37. The preceding paragraphs are re-stated and incorporated by reference in this cause of action.

38. Defendant John and Jane Doe(s), deputy sheriff's working for the Middlesex County Sheriff's Department, acted with deliberate indifference to a substantial risk of serious bodily injury or death to Miller by utterly failing to supervise the detainees in their custody to prevent the use of illegal drugs in the lock-up.

39. Defendant John and Jane Doe(s) also failed to observe that at least four of the inmates they transported back to MCI-Framingham were obviously high.

40. As a result Miller, an inmate with a history of drug abuse, obtained and overdosed on heroin while in state custody.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**REQUESTS FOR RELIEF**

WHEREFORE, the Plaintiff request that the Court:

1. Award compensatory damages, including damages for conscious pain and suffering and loss of consortium damages per 42 U.S.C. § 1983 and G.L. c. 229, § 2;

2. Award punitive damages per 42 U.S.C. § 1983;

3. Award attorney's fees per 42 U.S.C. § 1988;

4. Award any other relief the Court deems just.

|  |  |
|---|---|
|  | PLAINTIFF, ALETRUS ALEXANDER, By her attorneys, |
| Dated: September 22, 2014 | /s/ John R. Bita III_____<br>John R. Bita III, Esq. (BBO #667886)<br>7 Liberty Square, Second Floor<br>Boston, Massachusetts 02109<br>(617) 758-8800<br>jrb@bitalaw.com |
|  | and, |
|  | /s/ Michael J. Bace____<br>Michael J. Bace, Esq. (BBO #669948)<br>BACE LAW GROUP, LLC<br>PO Box 9316<br>Boston, MA 02114<br>508-922-8328<br>mjb@bacelaw.com |