United States District Court
District of Massachusetts

```
_____
                               )
ALETRUS ALEXANDER AS PERSONAL   )
REPRESENTATIVE OF THE ESTATE OF )
MONIQUE MILLER,                 )
                               )
          Plaintiff,           )      Civil Action No.
                               )      14-13675-NMG
          v.                   )
                               )
NANCY PADVAISKAS and           )
MICHAEL JACKSON,               )
                               )
          Defendants.          )
_____)
```

MEMORANDUM & ORDER

**GORTON, J.**

This civil rights claim arises from allegations regarding the death of an inmate from a drug overdose. Pending before the Court is the motion of defendant Michael Jackson ("Jackson") to dismiss the complaint. For the reasons that follow, that motion will be allowed and the claim against Jackson will be dismissed, leaving only the claim against defendant Nancy Padvaiskas ("Padvaiskas") to be adjudicated.

## I.  Background

The following are the relevant factual allegations culled from the Second Amended Complaint and the Memorandum in Opposition to the Motion to Dismiss. They are accepted as true for the purpose of the instant motion.

On or about May 21, 2013, Monique Miller ("Miller") was initially held at the Massachusetts Department of Corrections facility MCI-Framingham on charges of shoplifting and a second offense of possession of a controlled substance.  She was subsequently convicted of those charges in June, 2013.  Upon arrival at the corrections facility, Miller was initially housed in the mental health unit due to her condition but was later transferred into the general population.

On August 22, 2013, Miller was transported from MCI-Framingham to Boston for a court appearance on several outstanding criminal charges against her.  Officers assembled inmates at the Middlesex County Sheriff's lock-up on Thorndike Street in Cambridge, Massachusetts in order to facilitate their collective transportation for court appearances.  Jackson was the Deputy Sheriff in charge of the Thorndike Street lock-up on the day the officers transported Miller.

While in the Thorndike Street lock-up, Miller and other inmates from MCI-Framingham were joined by other female detainees who were not MCI-Framingham inmates.  One of them smuggled heroin and illicit painkillers into the cell in her vagina.  With one detainee keeping watch, Miller and four other detainees proceeded to snort heroin in the cell and then hide the evidence.  Jackson and the other officers did not discover the detainees' use of illicit drugs in the holding cell.

The officers transported Miller and the other inmates back to MCI-Framingham.  The prison staff did not examine Miller for drug use but returned her to her cell for the night at approximately 9:30 P.M.  Miller was subsequently discovered face-down on the floor by Padvaiskas, a prison guard who had passed by the cell several times without checking to see if medical care was needed.  Shortly after 5:00 A.M. the next morning, Padvaiskas had Miller's cellmate attempt to wake Miller but Miller was entirely unresponsive.

At 5:17 A.M., MCI-Framingham medical personnel entered the cell and discovered that Miller had no pulse and was not breathing.  Ambulance emergency medical technicians took over at about 5:30 A.M. and discovered that Miller had been dead for several hours. A doctor pronounced Miller dead at 5:43 A.M.

## II.   Procedural History

In September, 2014, Aletrus Alexander ("Alexander"), acting as the personal representative of the deceased Miller, brought this action against defendant Padvaiskas and several John and Jane Does seeking 1) compensatory damages under 42 U.S.C. § 1983 and M.G.L. c. 229, § 2, 2) punitive damages under 42 U.S.C. § 1983, 3) attorney's fees under 42 U.S.C. § 1988 and 4) any other relief this Court deems just.  Alexander filed a first amended complaint in January, 2015, in her capacity as permanent

representative of Miller's estate, and a second amended

complaint in April, 2015 to add Jackson as a party defendant.

In June, 2015, defendant Jackson moved to dismiss the

second amended complaint for failure to state a claim under Fed.

R. Civ. P. 12(b)(6) and under the doctrine of qualified

immunity.

## III. **Defendant Jackson's Motion to Dismiss**

To survive a motion to dismiss, a complaint must contain

"sufficient factual matter" to state a claim for relief that is

actionable as a matter of law and "plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is

facially plausible if, after accepting as true all non-

conclusory factual allegations, the court can draw the

reasonable inference that the defendant is liable for the

misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d

1, 12 (1st Cir. 2011).  A court may not disregard properly pled

factual allegations even if actual proof of those facts is

improbable. Id.  Rather, the relevant inquiry focuses on the

reasonableness of the inference of liability that the plaintiff

is asking the court to draw. Id. at 13.  When rendering that

determination, a court may not look beyond the facts alleged in

the complaint, documents incorporated by reference therein and

facts susceptible to judicial notice. Haley v. City of Boston,
657 F.3d 39, 46 (1st Cir. 2011).

To prevail in an action brought under 42 U.S.C. § 1983, a
plaintiff must show that he or she was deprived of a right,
privilege or immunity secured by the Constitution or laws of the
United States. See 42 U.S.C. § 1983 (2012); see also Natriello
v. Flynn, 837 F. Supp. 17, 18-19 (1993).  In this case,
plaintiff asserts violations of Miller's Eighth Amendment right
to be free from cruel and unusual punishments and her Fourteenth
Amendment right to due process of law. Am. Compl. 2d ¶¶ 46-47,
ECF No. 31.

   **A. Eighth Amendment**

Plaintiff has failed to state an Eighth Amendment claim in
this case.  The Eighth Amendment provides:

> Excessive bail shall not be required, nor excessive
> fines imposed, nor cruel and unusual punishments
> inflicted.

U.S. Const. amend. VIII.  The Eighth amendment scrutinizes "'the
treatment a prisoner receives in prison and the conditions under
which he is confined.'" Farmer v. Brennan, 511 U.S. 825, 832
(1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)).
Prison officials have duties to

> provide humane conditions of confinement; . . . ensure
> that inmates receive adequate food, clothing, shelter,
> and medical care, and must "take reasonable measures to
> guarantee the safety of the inmates."

Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).
When a plaintiff alleges that the conditions of his or her
confinement constitute cruel and unusual punishment, he or she
must demonstrate that the deprivation alleged was "objectively,
sufficiently serious" and that the prison official was
subjectively, deliberately indifferent to the inmates' health or
safety. Id. at 834.

With respect to the objective component, the Constitution
does not require comfortable prisons. Rhodes v. Chapman, 452
U.S. 337, 347 (1981).  It requires only that prison officials
provide for inmates' basic human needs as measured by
contemporary standards of decency. Id.  In order to assess the
objective factor, a court must determine

> whether society considers the risk that the prisoner
> complains of to be so grave that it violates contemporary
> standards of decency to expose anyone unwillingly to
> such a risk.

Helling, 509 U.S. at 35.

Deliberate indifference is measured subjectively.  The
Supreme Court has held that

> a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards
> an excessive risk to inmate health or safety; the
> official must be aware of facts from which the inference
> could be drawn that a substantial risk of serious harm
> exists and he must also draw the inference.

Farmer, 511 U.S. at 838 (emphasis added).  This, in essence,

means that

> an official's failure to alleviate a significant risk
> that he should have perceived but did not, while no cause
> for commendation, cannot . . . be condemned as the
> infliction of punishment.

Id. at 839.

Plaintiff has failed to state a claim as to both the

objective and subjective components of an Eighth Amendment

claim. See id. at 834.  Objectively, plaintiff fails to allege

any sufficiently serious deprivation of care and fails to allege

that Miller was exposed unwillingly to any grave risk. Helling,

509 U.S. at 35; see also Farmer, 511 U.S. at 834.  At most,

plaintiff asserts that Jackson deliberately failed to monitor

inmates that he knew, or should have known, were drug addicts

who would consume drugs smuggled into the lock-up facility by

another detainee. See Am. Compl. 2d ¶¶ 13-19, ECF No. 31.  Such

allegations fail to satisfy the objective standard in two ways.

First, because plaintiff does not contend that the risk of

exposure to drugs was greater inside the Thorndike Street lock-

up than outside of state custody, to find that Jackson violated

Miller's constitutional rights by failing to monitor her in

prison would be to conclude that inmates are constitutionally

entitled to greater protection from the effects of illicit drugs

than unincarcerated citizens. See, e.g., Shrader v. White, 761

- 7 -

F.2d 975, 980-81 (4th Cir. 1985); <u>Nunez</u> v. <u>Salamack</u>, No. 88-civ-4587-MCG, 1989 WL 74940 (S.D.N.Y. June 26, 1989); <u>cf.</u> <u>Morgan</u> v. <u>District of Columbia</u>, 824 F.2d 1049, 1057 (D.C. Cir. 1987).  For several reasons this cannot logically fall within the ambit of the Eighth Amendment.

Moreover, even if the Court were to accept the proposition that inmates are entitled to more protection than unincarcerated citizens, the right to be protected from voluntary consumption of illicit drugs is well beyond "the minimal civilized measures of life's necessities." <u>Rhodes</u>, 452 U.S. at 347.  Thus a denial of such protection is not cognizable under the Eighth Amendment. <u>Id.</u>  Furthermore, given that the consumption of illicit drugs in this case was voluntary, it cannot, objectively, be said that Miller was exposed "unwillingly" to any risk of harm in this case. <u>Helling</u>, 509 U.S. at 35.

In addition, Plaintiff has failed to state a claim as to the subjective portion of the Eighth Amendment analysis. <u>See</u> <u>Farmer</u>, 511 U.S. at 834-39.  The complaint specifically alleges that Jackson "knew, or should have known," of the risks involved with holding inmates who are drug addicts in custody with other detainees who may have smuggled drugs into the lock-up. Am. Compl. 2d ¶ 15, ECF No. 31.  At most that claims an awareness "of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." <u>Farmer</u>, 511 U.S. at

838.  The complaint completely fails, however, to allege that

Jackson actually drew such an inference as required to establish

deliberate indifference and, as such, plaintiff's Eighth

Amendment claim must fail. Id.

Plaintiff does not allege sufficient facts to state a claim

as to both the objective and subjective elements of an Eighth

Amendment violation.  Accordingly, plaintiff's Eighth Amendment

claim fails as a matter of law and the § 1983 action based on

such Eighth Amendment violation will be dismissed.

**B. Fourteenth Amendment**

Nor has plaintiff stated a Fourteenth Amendment violation.

In relevant part, the Fourteenth Amendment provides that

> [n]o state shall . . . deprive any person of life,
> liberty, or property without due process of law.

U.S. Const. amend. XIV.  In addition to providing procedural

rights and incorporating provisions of the Bill of Rights

against the states, the Fourteenth Amendment has also taken on

its own substantive meaning.  That Amendment completely bars

certain forms of governmental action, including activities that

would "shock the conscience" of a reasonable person. See, e.g.,

Rochin v. California, 342 U.S. 165, 172-74 (1952).  With respect

to this substantive protection, however, the United States

Supreme Court has consistently held that where a specific

provision of the Constitution addresses an issue, it is that

provision, as opposed to the generalized notion of substantive
due process, which will govern. See, e.g., Cty. Of Sacramento v.
Lewis, 523 U.S. 833, 842 (1998); Albright v. Oliver, 510 U.S.
266, 273 (1994); Graham v. Connor, 490 U.S. 386, 394 (1989).

Even taking the facts alleged by the plaintiff as true,
plaintiff does not set forth a valid claim under the Fourteenth
Amendment because the Eighth Amendment unambiguously covers the
actions at issue in the instant case. See Farmer, 511 U.S. at
832 ("'[T]he treatment a prisoner receives in prison and the
conditions under which he is confined are subject to scrutiny
under the Eighth Amendment.'" (quoting Helling, 509 U.S. at
31)). As such, it is the Eighth Amendment, and not a
generalized notion of substantive due process, that governs this
decision. See Lewis, 523 U.S. at 842; Albright, 510 U.S. at 273;
Graham, 490 U.S. at 394. Plaintiff has thus failed to state a
Fourteenth Amendment violation as a matter of law and the § 1983
action based on that defective claim will be dismissed.

## IV.  Qualified Immunity

Even if plaintiff were able to state a viable claim for
relief, it would be dismissed on the grounds of qualified
immunity.

Generally, government officials performing discretionary
functions are

shielded from liability for civil damage insofar as
their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable
person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  That standard
has been interpreted so broadly that qualified immunity protects
"all but the plainly incompetent or those who knowingly violate
the law." Hegarty v. Somerset Cty., 53 F.3d 1367, 1373 (1st Cir.
1995) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)).
Qualified immunity affords "an immunity from suit rather than a
mere defense to liability." See Mitchell v. Forsyth, 472 U.S.
511, 526 (1985).  The United States Supreme Court has stressed
the importance of resolving questions of immunity at the
earliest possible stage in litigation to preserve its integrity.
Harlow, 457 U.S. at 818; Siegert v. Gilley, 500 U.S. 226, 223
(1991).  Jackson has the burden of establishing his entitlement
to such immunity. DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35
(1st Cir. 2001).

Jackson is entitled to the protections of qualified
immunity unless: 1) the plaintiff's allegations, if true,
establish a constitutional violation, 2) the right was clearly
established at the time of the alleged violation and 3) a
similarly situated reasonable officer would have understood that
the challenged action violated the constitutional right at
issue. Rodriguez-Martin v. Rivera-Gonzalez, 438 F.3d 72, 83 (1st

Cir. 2006).  As a result, for plaintiff to defeat qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Here, plaintiff's claims against Jackson will be dismissed because Jackson is entitled to the protections of qualified immunity.  Jackson is a government official serving a discretionary function and was operating in his official capacity at the time of the alleged violation of plaintiff's constitutional rights. Harlow, 457 U.S. at 818.  As described, at length, above, plaintiff has failed to state a claim under either the Eighth or Fourteenth Amendment, and thus no constitutional violation has been established. See supra Part III.  Moreover, even if one could speculate that a violation of a constitutional right is implicated, current law clearly suggests otherwise.  A speculative violation of a constitutional right cannot be deemed clearly established as a matter of law. Anderson, 483 U.S. at 640.  As a result of such findings, Jackson is entitled to the protection of qualified immunity. Rodriguez-Martin, 438 F.3d at 83.  A finding of immunity will be applied at this early stage in the litigation in order to preserve Jackson's immunity from suit. Mitchell, 472 U.S. at 526; Harlow, 457 U.S. at 818; Siegert, 500 U.S. at 223.

Accordingly, even if plaintiff's constitutional claim were properly stated, defendant Jackson's motion to dismiss would be sustained on grounds of qualified immunity.


### ORDER

For the foregoing reasons, defendant Jackson's motion to dismiss (Docket No. 40) is **ALLOWED.**  The claim against Jackson is dismissed, leaving only the claim against Padvaiskas to be adjudicated.


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 2, 2015